UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: DAVOL, INC./C.R. BARD, INC., POLYPROPYLENE HERNIA MESH PRODUCTS LIABILITY LITIGATION

Case No. 2:18-md-2846

JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

**This document relates to:**
*Milanesi v. C.R. Bard*,
Case No. 2:18-cv-01320

## MOTIONS IN LIMINE OPINION & ORDER NO. 21

### Defendants' Motion *in Limine* ("MIL") No. 17

Defendants C.R. Bard, Inc. and Davol, Inc. filed a Motion *in Limine* to Exclude Evidence and Argument Concerning Unrelated Investigations, Convictions, Congressional Committee Proceedings and Letters, Settlements, or Alleged Bad Acts (ECF No. 182), which was opposed by Plaintiffs Antonio Milanesi and Alicia Morz de Milanesi (ECF No. 233). For the reasons that follow, the Court **DENIES** Defendants' Motion.

### I. Background[1]

The Milanesis' case will be tried as the second bellwether selected from thousands of cases in this multidistrict litigation ("MDL") titled *In Re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*, 2:18-md-2846. The Judicial Panel on Multidistrict Litigation described the cases in this MDL as "shar[ing] common factual questions arising out of

---

[1] For a more complete factual background, the reader is directed to the Court's summary judgment opinion and order in this case *Milanesi v. C.R. Bard*, Case No. 2:18-cv-01320. (ECF No. 167.) All docket citations are to the *Milanesi* case, 2:18-cv-1320, unless otherwise noted.

allegations that defects in defendants' polypropylene hernia mesh products can lead to complications when implanted in patients, including adhesions, damage to organs, inflammatory and allergic responses, foreign body rejection, migration of the mesh, and infections." (Case No. 2:18-md-02846, ECF No. 1 at PageID #1–2.)

Plaintiffs bring this action to recover for injuries sustained as a result of the implantation of the Ventralex Large Hernia Patch, alleging that Defendants knew of the risks presented by the device but marketed and sold it despite these risks and without appropriate warnings. After summary judgment, the following claims remain for trial: defective design (strict liability), failure to warn (strict liability), negligence, gross negligence, negligent misrepresentation, fraud and fraudulent misrepresentation, fraudulent concealment, loss of consortium, and punitive damages.

The relevant facts here are that Mr. Milanesi underwent surgery to repair what appeared to be a recurrent hernia but was revealed to be a bowel erosion with a fistula and adhesions, which required a bowel resection. Shortly thereafter, Mr. Milanesi suffered a high-grade post-operative small bowel obstruction that required emergency surgery. Mr. Milanesi had the Ventralex Large Hernia Patch implanted ten years earlier to repair a hernia.

In Defendants' MIL No. 17, they move to exclude under Federal Rules of Evidence 401, 402, 403, 404(b), 408, and 802 all evidence and argument concerning "unrelated investigations, convictions, settlements, alleged bad acts, or other alleged 'illegal activities' that have nothing to do with the issues in this case." (Defs' MIL No. 17, ECF No. 182 at PageID #13885.)

## II.   Standards

"Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion *in limine*." *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d 698, 721 (S.D. Ohio 2016). The practice of ruling on such

motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "The purpose of a motion *in limine* is to allow a court to rule on issues pertaining to evidence prior to trial to avoid delay and ensure an evenhanded and expedient trial." *In re E.I. du Pont*, 348 F. Supp. 3d at 721 (citing *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). However, courts are generally reluctant to grant broad exclusions of evidence before trial because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Unless a party proves that the evidence is clearly inadmissible on all potential grounds—a demanding requirement—"evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846; *see also Koch*, 2 F. Supp. 2d at 1388 ("[A] court is almost always better situated during the actual trial to assess the value and utility of evidence."). The denial, in whole or in part, of a motion *in limine* does not give a party license to admit all evidence contemplated by the motion; it simply means that the Court cannot adjudicate the motion outside of the trial context. *Ind. Ins Co.*, 326 F. Supp. 2d at 846.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Irrelevant evidence is" inadmissible. Fed. R. Evid. 402. A court may exclude relevant evidence under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidentiary rulings are made subject to the district court's sound discretion.

3

*Frye v. CSX Trans., Inc.*, 933 F.3d 591, 598 (6th Cir. 2019); *see also Paschal v. Flagstar Bank*, 295 F.3d 565, 576 (6th Cir. 2002) ("In reviewing the trial court's decision for an abuse of discretion, the appellate court must view the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."). Rule 404(b) prohibits "[e]vidence of a crime, wrong, or other act" to "prove a person's character in order to show that on a particular occasion that person acted in accordance with the character." Fed. R. Evid. 404(b). Rule 408 prohibits admission of offers and promises of "valuable consideration in compromising or attempting to compromise [a] claim" and conduct and statements made during these negotiations if offered "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). Such evidence may be admitted for another purpose, however. Fed. R. Evid. 408(b). The dispositive inquiry for Rule 408 is whether the settlement or evidence of statements made during settlement negotiations are offered to prove or disprove the validity or amount of a claim. *Appalachian Reg'l Healthcare, Inc. v. U.S. Nursing Corp.*, 824 F. App'x 360, 373 (6th Cir. 2020); *Arnold v. Wilder*, 657 F.3d 353, 367 (6th Cir. 2011). Hearsay is an out-of-court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(a), (c). Unless a statement falls within an exception or exclusion set forth by the Federal Rules of Evidence, federal statute, or Supreme Court precedent, hearsay is inadmissible. Fed. R. Evid. 802.

### III. Analysis

Both parties agree that a similar issue was before this Court in the first bellwether case, *Johns v. C. R. Bard, Inc., et al.*, Case No 2:18-cv-01509, where Defendants moved to exclude the same evidence of unrelated investigations, convictions, congressional committee proceedings and letters, settlements, or alleged bad acts. The Court denied the motion. (Case No 2:18-cv-01509,

4

MIL Order No. 8, ECF No. 390.) Defendants note that in *Johns*, the plaintiff "did not attempt to introduce any such evidence, [but] in an abundance of caution, Bard files this motion again here." (Defs' MIL No. 17, ECF No. 182 at PageID #13885.) As with *Johns*, Defendants here seek to exclude three types of evidence, which the Court will address in turn.

### A. Evidence of Guilty Pleas in Relation to Cardiac Catheter Devices

In 1994, "Bard and certain former employees from a division unrelated to hernia mesh pled guilty to selling heart catheters that the FDA allegedly did not approve for human use." (Defs' MIL No. 17, ECF No. 182 at PageID #13886.) Defendants argue that evidence of the guilty pleas is inadmissible under Federal Rules of Evidence 401, 402, 403, 404, and 609. Plaintiffs respond that they would use the evidence in the event that Defendants open the door by introducing evidence or making arguments about Defendants' good character or long history of making patient safety a priority. In ruling on the Defendants' similar motion in *Johns*, the Court explained the Rule 609 analysis:

> Rule 609 governs impeachment of a witness with evidence of a criminal conviction. Under this rule, the use of prior convictions attacks a witness's general character for truthfulness or untruthfulness. Fed. R. Evid.609(a); Victor J. Gold, 28 Fed. Prac. & Proc. Evid. § 6133 (2d ed.), Westlaw (database updated Oct. 2020). This rule is premised on the idea that those who have been convicted before of a felony or other crimes based upon dishonesty or false statements are more likely to commit perjury now. *United States v. Noble*, 754 F.2d 1324, 1331 (7th Cir. 1985) (*citing* Conf. Rep. No. 1597, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 7051, 7098, 7103). Impeachment under Rule 609 is a blanket attack, used to demonstrate that the witness's testimony should not be credited in any regard. Extrinsic evidence of a conviction is permissible. Fed. R. Evid. 608(b).
>
> Impeachment-by-contradiction evidence, however, is a targeted attack upon a witness's credibility. This type of evidence "permits courts to admit extrinsic evidence that specific testimony is false, because [the testimony is] contradicted by other evidence." *United States v. Craig*, 953 F.3d 898, 904 (6th Cir. 2020) (quoting *United States v. Kincaid-Chauncey*, 556 F.3d 923, 932 (9th Cir. 2009)). More precisely, impeachment by contradiction shows that the witness is mistaken, "that something he said is not so," but does not identify the source of the witness's mistake, be it an instance of untruthfulness, bias, misperception, lack of knowledge, etc. Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 6:85 (4th

5

ed.), Westlaw (database updated May 2020); *see also* Roger Park & Tom Lininger, The New Wigmore. A Treatise on Evidence § 4.1 (1st ed. Supp. 2021) ("This form of impeachment shows an indefinite capacity to err. It does not tell us the source of the error."). Impeachment by contradiction is a custom inherent to our adversarial system, recognized by the vast majority of federal courts and commentators alike, though the Federal Rules of Evidence do not expressly contemplate (much less forbid) the method. Mueller & Kirkpatrick, *supra*, at § 6:90; *see also* Park & Lininger, *supra*, at § 4.1. Extrinsic evidence of prior convictions offered to impeach via contradiction of a witness's specific testimony is not prohibited by Rules 608 and 609, or even Rule 404; it is governed simply by Rule 403. *E.g.*, *United States v. Gilmore*, 553 F.3d 266, 271–73 (3d Cir. 2009); *United States v. Benavides*, 470 F. App'x 782, 790 (11th Cir. 2012); *see also* Fed. R. Evid. 608 advisory committee's note to 2003 amendment ("The Rule has been amended to clarify that the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness." (collecting authorities)). Although the Sixth Circuit has "expressed skepticism as to whether impeachment by contradiction is permissible in this circuit," *Craig*, 953 F.3d at 905, the Sixth Circuit has upheld the admission of such evidence, though it does not specify that it is doing so and often purports to be applying Rule 609, *e.g.*, *United States v. Bender*, 265 F.3d 464, 471 (6th Cir. 2001).

   The distinction between Rule 609 evidence and prior convictions serving as impeachment-by-contradiction evidence frequently does not matter for the ultimate question of admissibility. For example, in a civil case, evidence of a prior felony conviction would be subject to Rule 403 whether introduced under Rule 609 or to impeach by contradiction. Fed. R. Evid. 609(a)(1)(A). The distinction matters in some cases, however. A conviction for a crime requiring proof of dishonesty or false statements that is less than ten years old must be admitted in a civil case or criminal case against a witness under Rule 609(a)(2); there is no Rule 403 backstop. Fed. R. Evid. 609(a)(2) (including mandatory language, "must be admitted"). And if a conviction is more than ten years old, the more demanding balancing test in Rule 609(b)(a)(2) applies, presenting a higher hurdle for the party offering the conviction to impeach a witness's general character for truthfulness, as opposed to a party offering the conviction to contradict a witness's specific statement, to which Rule 403 applies. The Sixth Circuit has not yet expressly considered the distinction between convictions offered under Rule 609 and those offered to impeach by contradiction.

   Even another wrinkle presented by Rule 609 must be addressed. When a corporate witness will testify, it is undecided if evidence of the corporation's conviction is properly admissible under Rule 609 to impeach the testifying corporate witness when the witness was uninvolved in the conduct giving rise to the prior conviction. *Hickson Corp. v. Norfolk S. Ry. Co.*, 124 F. App'x 336, 342–43 (6th Cir. 2005) (declining to decide this issue).[2] If a corporate witness were

---

[2] The parties do not expressly state whether the witnesses were involved in the 1994 convictions. But based on the arguments, the Court assumes that none of the corporate witnesses were involved in the conduct leading up to the 1994 convictions, nor were they themselves convicted of a crime. (*See* ECF No. 220 at PageID #12073; ECF No. 289 at PageID #16030.)

> uninvolved in the conduct underlying the conviction, it would not tend to suggest that this particular corporate witness has an untruthful character. Gold, *supra*, at § 6133 n.49 ("There is limited authority suggesting that a conviction of a corporation may be employed to impeach the officers, directors, or managing agent of the corporation, even if they were not personally convicted themselves." (collecting cases)). The Third Circuit—the only court of appeals to decide this issue—put it succinctly: "Criminal acts are relevant to a witness' credibility only if that witness actually participated in the criminal conduct. It strains logic to argue that an employee's credibility is properly brought into question by the mere fact that he or she is presently employed by a corporation that in some unrelated manner was guilty of dishonest acts, no matter how egregious those acts may have been." *Walden v. Ga.-Pac. Corp.*, 126 F.3d 50, 523–24 (3d Cir. 1997).[3] However, impeachment-by-contradiction would clearly be permissible for a corporate witness regardless of their involvement in acts giving rise to a corporate conviction because the aim is to demonstrate that the witness is objectively mistaken.

(Case No 2:18-cv-01509, MIL Order No. 8, ECF No. 390 at PageID #20895–98.) The Court concluded that Rule 609 did not govern admissibility of the 1994 convictions because the plaintiff did not propose an attack on a corporate witness's general character for truthfulness, but proposed to use the evidence to contradict specific testimony that Defendants may offer. The same is true here. Plaintiffs seek to use evidence of the 1994 convictions to impeach and rebut if Defendants open the door "with evidence and/or arguments about their good character, including 'broad denials' of ever misleading the FDA, or their alleged history of putting safety first, through their corporate representatives[.]" (Pls' Mem. in Opp., ECF No. 233 at PageID #15302.)

---

[3] Plaintiff points to one case permitting use of a corporation's convictions to impeach a corporate witness, reaching this conclusion because "a corporation cannot testify as a witness but through testimony of its employees and representatives." (ECF No. 289 at PageID #16030 (quoting *Stone v. C.R. Bard*, No. 02 CIV 3433 WHP, 2003 WL 22902564, at *2 (S.D.N.Y. Dec. 8, 2003).) This may be the case, but this statement does nothing to show that Rule 609 should be applied when the corporate witness was uninvolved in the activity giving rise to the conviction. The court in *Stone* relied on agency theory to permit impeachment of a corporate witness's testimony under Rule 609. *Stone*, 2003 WL 22902564, at *2. But if the corporate witness was uninvolved in the activity underlying the conviction, the witness was not then the corporation's agent, and agency law provides no rationale for permitting impeachment of the corporate witness under Rule 609. This rationale is only sensible when the witness was somehow involved in the conduct leading to a conviction. *See CGM Contractors, Inc. v. Contractors Env't Servs., Inc.*, 383 S.E.2d 861, 866 (W. Va. 1989) (holding that a corporate conviction is admissible against a witness only if the witness "held a managerial position at the time the crime occurred such that it may be fairly inferred that he shared responsibility for the criminal act, or have actually participated in the criminal act"); *see also Walden*, 126 F.3d at 524 n.16 (declining to expressly adopt West Virginia's conclusion, but concluding that it was consistent with its own reasoning).

However, as the Court noted in *Johns*, evidence of the 1994 convictions must still pass Rule 403's balancing test:

> In the Rule 403 context, the age of a prior conviction may lessen its probative value and increase the risk of prejudice. *See Gilmore*, 553 F.3d at 266. The weighing of the probative value of the contradiction, however, depends in part on the exact testimony offered. For example, a "broad denial" of ever misleading the FDA would increase the probative value of Defendants' 1994 conviction, though "[a] more limited denial," such as one that denies ever misleading the FDA in relation to the Ventralight ST, would decrease the probative value of the prior conviction while drastically raising the risk of unfair prejudice to Defendants. *See id.* at 273. For this reason, the Court cannot determine outside of trial whether evidence of Defendants' prior convictions is admissible to impeach Defendants.
> Defendants offer no compelling arguments that the Court should decide the Rule 403 issue now. Defendants argue that any evidence of their 1994 convictions would lead the jury punish them for their actions in 1994, instead of those at issue here. (ECF No. 220 at PageID #12074.) But this risk is small if used only to impeach a defense witness on a narrow and specific assertion. Moreover, Defendants can avoid the issue in the first place by avoiding opening the door, which suggests that the Court should withhold its judgment until trial.
> Defendants also argue that if evidence of the 1994 convictions were admitted, they would have to describe the actions they took to rectify their alleged transgressions against the FDA, such as selling the division of Bard implicated in 1994 and implementing a new compliance program. (*Id.* at PageID #12074.) Evidence about selling off unrelated divisions appears to be inadmissible because it is irrelevant to the merits of Plaintiff's claims and does not appear to serve a rehabilitative purpose. As for evidence of corporate changes to avoid further liability, this would appear to behoove Defendants, lengthening the trial only to demonstrate how Defendants' corporation is now in compliance with FDA regulations, which help define the standard of care. *Downing*, 194 P.3d at 948. The prejudice to Defendants is not so clear that the Court can grant Defendants' motion on the basis of Rule 403.

(Case No 2:18-cv-01509, MIL Order No. 8, ECF No. 390 at PageID #20899–900.)  Pursuant to the above analysis, the Court denied this part of Defendants' motion, with the condition that no party could mention or introduce testimony on the subject without prior approval of the Court due to the high degree of potentially unfair prejudice.  Defendants make no persuasive arguments as to why the Court should rule differently on this issue than it did in *Johns*.  Therefore, this portion of Defendants' motion is denied, subject to the following.  Because the prior conviction has a high

8

degree of potentially unfair prejudice, no party may mention or introduce testimony on the subject without prior approval of the Court.

### B. Evidence of 2013 Investigation and Settlement Related to Defendants' Brachytherapy Seeds

In 2013, Bard entered into a settlement agreement "following an investigation into allegations that a Bard division ***not involved in hernia products*** provided remuneration to physicians to increase sales of brachytherapy seeds for prostate cancer treatments." (Defs' MIL No. 17, ECF No. 182 at PageID #13891 (emphasis in original).) Defendants argue that evidence of the investigation and settlement is irrelevant and is inadmissible as evidence of a settlement under Federal Rule of Evidence Rule 408. Plaintiffs again respond that they should be permitted to introduce this evidence if Defendants open the door. In *Johns*, the Court reasoned:

> Evidence of the fact that this settlement exists is not categorically prohibited by Rule 408. Rule 408 prohibits admission of offers and promises of "valuable consideration in compromising or attempting to compromise the claim" and conduct and statements made during these negotiations if offered "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). Such evidence may be admitted for another purpose, however. Fed. R. Evid. 408(b). The dispositive inquiry for Rule 408 is whether the settlement or evidence of statements made during settlement negotiations are offered to prove or disprove the validity or amount of a claim. *Appalachian Reg'l Healthcare, Inc. v. U.S. Nursing Corp.*, 824 F. App'x 360, 373 (6th Cir. 2020); *Arnold v. Wilder*, 657 F.3d 353, 367 (6th Cir. 2011). Here, evidence of the settlement would not be introduced to prove or disprove the validity of that 2013 settlement. Accordingly, Rule 408 is inapplicable.
> The relevance and prejudice of this evidence is unclear. Plaintiff argues he would offer this evidence to impeach and rebut witness testimony, but just how probative and material or how prejudicial and confusing this evidence is depends on the context at trial. For example, if a corporate witness for Defendants testified that Bard or Davol has never made a false statement about its devices, evidence of this settlement would likely be relevant and admissible. Additionally, the parties pay little attention to this argument, focusing more on the 1994 conviction arguments. Thus, this part of the motion generally lacks detail and context necessary to decide before trial whether evidence of the 2013 settlement is admissible.

(Case No 2:18-cv-01509, MIL Order No. 8, ECF No. 390 at PageID #20901–02.) Again,

Defendants do not offer any persuasive reason as to why the Court should rule differently on this issue than it did in *Johns*. Therefore, this portion of Defendants' motion is denied, subject to the following. Neither party shall mention or offer testimony on the 2013 settlement without prior approval of the Court.

### C. Evidence of Congressional Proceedings and Correspondence

Finally, Defendants argue that evidence of correspondence from the United States Senate Special Committee on Aging, specifically a letter sent eight months after a hearing, should be excluded as irrelevant, confusing, and inadmissible hearsay. Plaintiffs argue that the Congressional evidence concerns both vaginal/pelvic mesh and hernia mesh, and therefore "is directly relevant to the circumstances surrounding what [Defendants] knew about the concerns related to the safety of their mesh, when they knew it, and what actions they took to prevent their mesh from harming patients implanted with the mesh . . . Defendants' corporate conduct and the reasonableness of that conduct are at issue in this case." (Pls' Mem. in Opp., ECF No. 233 at PageID #15303–04.) (ECF No. 182 at PageID #13891–94.) Defendants also raised this issue in *Johns*, and in ruling on the motion the Court reasoned:

> To the extent that evidence related to the congressional Committee is indicative of Defendants' understanding of the risk posed by polypropylene, which is the raw material used in both vaginal and hernia mesh, and how this knowledge informed Defendants' conduct goes to the reasonableness of Defendants' conduct. Notice or knowledge is a non-hearsay use for out-of-court statements. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009). And any of Defendants' correspondence with Congress would fall within the party-opponent exemption from hearsay. Fed. R. Evid. 801(d)(2).
> However, not every piece of congressional correspondence necessarily falls within Rule 803(8)(iii). The Rule provides, in relevant part, that a public record is an exception to the rule against hearsay if the statement from a public office sets out "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(iii). The requirement that the statement contain *factual* findings is inflexible. For example, subjective findings from Congress do not satisfy Rule 803(8)(A)(iii). *Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19, 23 (6th Cir. 1984). Plaintiff points to nothing that would suggest that a record of the proceedings

10

> or the letter from a congressional committee to Defendants would qualify as factual findings from an investigation. Rather, the letter appears to ask questions of Defendants and set forth concerns. But neither Defendants nor Plaintiff attaches the evidence at issue or provides a record citation so that the Court may view the evidence regarding the congressional proceedings.[4] The Court declines to rule definitively without the benefit of viewing the letter.

(Case No 2:18-cv-01509, MIL Order No. 8, ECF No. 390 at PageID #20902–03.)  Again, Defendants do not offer any persuasive reason as to why the Court should rule differently on this issue than it did in *Johns*.  Therefore, this portion of Defendants' motion is denied, subject to the following.  Neither party may refer to or offer testimony of the congressional correspondence referenced here without prior approval of the Court.

### IV. Conclusion

For the reasons set forth above, the Court **DENIES** Defendants' MIL No. 17 (ECF No. 182).

As with all *in limine* decisions, this ruling is subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda.

**IT IS SO ORDERED.**


**12/2/2021**                                s/Edmund A. Sargus, Jr.
**DATE**                                     **EDMUND A. SARGUS, JR.**
                                             **UNITED STATES DISTRICT JUDGE**

---

[4] Of course, Plaintiff bears the ultimate burden of demonstrating admissibility as the proponent of the evidence. *United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005). But the movant bears the burden at the motion-in-limine stage. *Supra*, Part II.