UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: DAVOL, INC./C.R. BARD, INC., POLYPROPYLENE HERNIA MESH PRODUCTS LIABILITY LITIGATION | Case No. 2:18-md-2846<br><br>JUDGE EDMUND A. SARGUS, JR.<br>Magistrate Judge Kimberly A. Jolson |

**This document relates to:**
*Milanesi v. C.R. Bard*,
Case No. 2:18-cv-01320

## MOTIONS IN LIMINE OPINION & ORDER NO. 31

### Plaintiffs' Motion *in Limine* ("MIL") No. 7

Plaintiffs Antonio Milanesi and Alicia Morz de Milanesi filed a Motion *in Limine* to Exclude All Testimony or Arguments Related to the Adverse Event Rate of the Ventralex Patch from Defendants' Counsel As Well As Any Undisclosed Expert Opinions (Plaintiffs' MIL No. 7, ECF No. 211), which is opposed by Defendants C.R. Bard, Inc. and Davol, Inc. (ECF No. 241). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' MIL No. 7.

### I. Background[1]

The Milanesis' case will be tried as the second bellwether selected from thousands of cases in this multidistrict litigation ("MDL") titled *In Re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*, 2:18-md-2846. The Judicial Panel on Multidistrict

---

[1] For a more complete factual background, the reader is directed to the Court's summary judgment opinion and order in this case *Milanesi v. C.R. Bard*, Case No. 2:18-cv-01320. (ECF No. 167.) All docket citations are to the *Milanesi* case, 2:18-cv-1320, unless otherwise noted.

Litigation described the cases in this MDL as "shar[ing] common factual questions arising out of allegations that defects in defendants' polypropylene hernia mesh products can lead to complications when implanted in patients, including adhesions, damage to organs, inflammatory and allergic responses, foreign body rejection, migration of the mesh, and infections." (Case No. 2:18-md-02846, ECF No. 1 at PageID #1–2.)

Plaintiffs bring this action to recover for injuries sustained as a result of the implantation of the Ventralex Large Hernia Patch, alleging that Defendants knew of the risks presented by the device but marketed and sold it despite these risks and without appropriate warnings. After summary judgment, the following claims remain for trial: defective design (strict liability), failure to warn (strict liability), negligence, gross negligence, negligent misrepresentation, fraud and fraudulent misrepresentation, fraudulent concealment, loss of consortium, and punitive damages.

The relevant facts here are that Mr. Milanesi underwent surgery to repair what appeared to be a recurrent hernia but was revealed to be a bowel erosion with a fistula and adhesions, which required a bowel resection. Shortly thereafter, Mr. Milanesi suffered a high-grade post-operative small bowel obstruction that required emergency surgery. Mr. Milanesi had the Ventralex Large Hernia Patch implanted ten years earlier to repair a hernia.

In Plaintiffs' MIL No. 7, they move to exclude under Federal Rules of Evidence 403, 702, and 703 testimony and argument "related to the adverse event rate of the Ventralex Patch on its own or compared to other hernia mesh products to prove that the Ventralex Patch was safe and effective, was not defective, or did not lead to any higher risk than any other hernia mesh products available on the market. As such, Plaintiffs move to exclude Defendants' experts from offering any evidence or testimony that is beyond the scope of the opinions expressed in their expert reports or at their deposition[.]" (Pls' MIL No. 7, ECF No. 211 at PageID #14904.)

2

## II. Standards

"Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion *in limine*." *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d 698, 721 (S.D. Ohio 2016). The practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "The purpose of a motion *in limine* is to allow a court to rule on issues pertaining to evidence prior to trial to avoid delay and ensure an evenhanded and expedient trial." *In re E.I. du Pont*, 348 F. Supp. 3d at 721 (citing *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). However, courts are generally reluctant to grant broad exclusions of evidence before trial because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Unless a party proves that the evidence is clearly inadmissible on all potential grounds—a demanding requirement—"evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846; *see also Koch*, 2 F. Supp. 2d at 1388 ("[A] court is almost always better situated during the actual trial to assess the value and utility of evidence."). The denial, in whole or in part, of a motion *in limine* does not give a party license to admit all evidence contemplated by the motion; it simply means that the Court cannot adjudicate the motion outside of the trial context. *Ind. Ins Co.*, 326 F. Supp. 2d at 846.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Irrelevant evidence is" inadmissible. Fed. R. Evid.

402. A court may exclude relevant evidence under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidentiary rulings are made subject to the district court's sound discretion. *Frye v. CSX Trans., Inc.*, 933 F.3d 591, 598 (6th Cir. 2019); *see also Paschal v. Flagstar Bank*, 295 F.3d 565, 576 (6th Cir. 2002) ("In reviewing the trial court's decision for an abuse of discretion, the appellate court must view the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.").

### III. Analysis

Both parties agree that similar issues were before this Court in the first bellwether case, *Johns v. C. R. Bard, Inc., et al.*, Case No 2:18-cv-01509. In *Johns*, the Court granted in part and denied in part the plaintiff's motion to exclude any percentage or comparative analysis of adverse events. (Case No 2:18-cv-01509, MIL Order No. 7, ECF No. 375.) The Court held that Defendants would only be permitted to introduce their adverse event rate through a qualified witness who was subject to vigorous cross examination. In ruling on the plaintiff's motion in *Johns*, the Court also ruled that:

> "[A] counsel-created, post-hoc adverse event rate to be used during argument . . . would unduly prejudice Plaintiff and mislead the jury. Neither Plaintiff nor Defendants cite a case addressing the admissibility of an adverse event rate outside of the context of expert testimony. *E.g.*, *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 45 F. Supp. 3d 724, 732 (N.D. Ohio 2014). This makes sense because in the expert witness context, it is crucial that the opposing party can challenge the qualified *witness's* calculation of the rate. *E.g.*, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). Here, defense counsel cannot testify as an expert witness and be cross-examined so that their methodology can be dissected by Plaintiff's counsel. And there is no doubt that statistics lend an air of scientific reliability, which is inappropriate outside of the expert witness context. . . . Accordingly, Defendants will only be permitted to introduce their adverse event

4

> rate through a qualified witness who was subject to vigorous cross examination. . . . Closing argument may not be used by either side to argue statistics, rates, or other similar matters not adduced as evidence from a qualified witness.

(*Id.* at PageID #20353-54.) The same analysis applies here, and the Court adopts its prior ruling in *Johns*.

Plaintiffs also ask the Court to "exclude Defendants' experts from offering any evidence or testimony that is beyond the scope of the opinions expressed in their expert reports or at their deposition, such as an undisclosed opinion related to the adverse event rate of the Ventralex Patch." (Pls' MIL No. 7, ECF No. 211 at PageID #14904.). Plaintiffs claim that Defendants' experts, specifically Dr. Gillian and Dr. Gleit, did not disclose opinions regarding the adverse event rates for the Ventralex. (*Id.* at PageID #14909.) However, as Defendants point out in their response, Dr. Gillian and Dr. Gleit did offer opinions regarding adverse event rates for the Ventralex and for mesh hernia repairs generally in their expert reports. (Defs' Mem. in Opp., ECF No. 241 at PageID #15680; ECF No. 77-5 at PageID #4540–41; ECF No. 74-6 at PageID #4079, 4082-83.) Plaintiffs did not raise these issues regarding the opinions on adverse event rates in their *Daubert* motions to exclude Dr. Gillian's (ECF No. 77) and Dr. Gleit's (ECF No. 74) testimony, which would have been the proper vehicle for such an objection. *See Wisc. Loc. Gov't Prop. Ins. Fund v. CH2M Hill, Inc.*, No. 02-C-302-DRH, 2005 WL 8165822, at *3 (E.D. Wisc. Dec. 8, 2005) ("[A] motion in limine is not the proper vehicle for opposing the qualifications and/or testimony of any expert witness. Instead, this objection is more properly guised in a ***Daubert*** motion.") (emphasis in original). Plaintiffs may cross-examine the expert witnesses and challenge the reports, highlighting for the jury any inadequacies. "[A]rguments about the accuracy of [the expert's] conclusion [are] appropriately left to '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction of the burden of proof,' rather than exclusion." *In re E.I. DuPont De Nemours & Co. C-8 Pers. Inj. Litig.*, 337 F. Supp. 3d 728, 743 (S.D. Ohio 2015) (quoting *Daubert v. Merrell Dow Pharms.*, 509

5

U.S. 579, 596 (1993)).

## IV. Conclusion

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' MIL No. 7 (ECF No. 211).

As with all *in limine* decisions, this ruling is subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda.

**IT IS SO ORDERED.**

**12/9/2021**                  **s/Edmund A. Sargus, Jr.** 
**DATE**                      **EDMUND A. SARGUS, JR.**
                                           **UNITED STATES DISTRICT JUDGE**