UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: DAVOL, INC./C.R. BARD, INC., POLYPROPYLENE HERNIA MESH PRODUCTS LIABILITY LITIGATION | Case No.: 2:18-md-2846<br><br>JUDGE EDMUND A. SARGUS, JR.<br>Magistrate Judge Kimberly A. Jolson |
| **This document relates to:**<br>**ANTONIO MILANESI, et al.** | Case No.: 2:18-cv-01320 |

**DEFENDANTS C. R. BARD, INC. AND DAVOL INC.'S REPLY TO PLAINTIFFS'
RESPONSE TO BRIEF IN OPPOSITION TO ALLOWING NEW OPINIONS FROM
<u>PLAINTIFFS' ECONOMIC EXPERT</u>**

I. INTRODUCTION

Plaintiffs' Response Brief is an attempt to rewrite history by relying on an unsupported interpretation of the record. Yet not even this fictional account can fix the fatal flaws in their attempt at an eleventh hour resurrection of their damages expert, Robert W. Johnson, whose disclosed opinions have been stricken in their entirety.

*First*, Bard's Motion to Exclude Mr. Johnson resulted in one outcome and one outcome alone: the exclusion of his opinions. *See* Evidentiary Motions Opinion & Order No. 20 ("EMO No. 20"), ECF No. 220, at 10 ("Defendants' motion [to exclude Mr. Johnson] is **GRANTED**.") (emphasis in original). The Court reached this decision relying on only one of the grounds raised by Bard in its motion—*i.e.*, Mr. Johnson's exclusive focus on the "non-parent parent company's financials" made his opinions irrelevant "to Defendants' ability to pay"—and therefore did not rule on any of the other grounds raised. *Id.* at 9-10. But this did not make the exclusion of his opinions something less than "categorical[]," as Plaintiffs suggest. Resp. Br., ECF No. 344, at 6. The Court did not keep open the possibility that Mr. Johnson might get a "do over" and offer new or even updated opinions—up until the eve of trial, no less—and Plaintiffs have never sought leave to do so when it might have made sense. Nor do Plaintiffs' attempts to label his Bard financial opinions as "supplemental," as opposed to *new*, follow from the Court's Order, which found that he had offered opinions about **Becton, Dickinson and Company's** ("BD's") financial condition in his report, and not Bard's. EMO No. 20, ECF No. 220, at 9-10. There is no live report to supplement.

*Second*, Bard did not "agree[] to work with Plaintiffs to supplement Mr. Johnson's expert report with Bard's financial information." Resp. Br., ECF No. 344, at 3. Not even Plaintiffs' strained reliance on a *January 2020* email exchange, their sole source of "evidence" of this so-called agreement, bears this out. The emails, *from over two years ago and 17 months before the*

1

***Court excluded Mr. Johnson's opinions in Johns***, show Bard's willingness to work with Plaintiffs about supplementing discovery into Bard's financial information, but Bard wanted to leave the issue of any supplementation of Mr. Johnson's report "down the line," *i.e.*, after the parties tested their legal arguments with the court. January 2020 Emails, ECF No. 344-1, at 2. Bard did not give Plaintiffs an open-ended invitation to designate new (or supplemental) opinions, and Bard was certainly not prospectively waiving the effects of any future *Daubert* order, much less two of them, excluding his opinions.

Moreover, it is preposterous to suggest that "Defendants represented to the Court that they would agree to the supplementation of Mr. Johnson's report." *Id*. at 2. This contention is not supported by any citation or exhibit. To the contrary, the December 2021 joint Discovery Update noted Plaintiffs' desire to "supplement" Mr. Johnson's excluded opinions, but Bard never acceded or agreed to a new or supplemental Johnson report, particularly after the exclusion of Mr. Johnson's opinions. It certainly never agreed that Mr. Johnson could get a do-ever without time to depose him, file a *Daubert* motion (including on the grounds not addressed by the Court in the prior two successful motions), and respond to new opinions from Mr. Johnson with its own corresponding expert. In other words, as in the Discovery Update, "Defendants reserve[d] their rights in connection with any expert disclosures, opinions, or discovery in relation to this issue." Discovery Update, ECF No. 344-1, at 5.

***Third***, Plaintiffs' fallback is to blame Bard for "obstruct[ing]" and "drag[ging] [its] feet." *Id.* at 7, 8. The timeline of events does not support this characterization, beginning with Plaintiffs' own admission that despite the January 2020 email exchange with Bard about supplemental financial discovery, they did not "doggedly" get to work on this area of discovery until during trial in *Johns*, nearly two months after this Court's June 28, 2021, order excluding Mr. Johnson's

2

opinions in the report served in *Johns*, this case, and the other bellwether pool cases. *Id*. at 7. To be clear, during the *Johns* trial, there was substantial supplemental discovery into Bard's financials, including a deposition of a Bard representative, but none of that activity was tied to the prospect of "supplementing" Mr. Johnson's report. The PSC was prepared to go to the punitive damages phase without Mr. Johnson in *Johns*. Plaintiffs here have received even more supplemental discovery since then and should likewise to proceed without Mr. Johnson.

***Fourth***, Plaintiffs utterly ignore the practical burdens of ripping up the Court's order excluding Mr. Johnson's opinions to allow Mr. Johnson to offer new opinions on the eve of trial, including the need to depose him again, new *Daubert* briefing, and the need for a rebuttal expert, with only 17 days to go before trial. Plaintiffs take for granted that Mr. Johnson's new opinions will be found "relevant" and "helpful," *id*. at 5, but—even if this prediction were correct—there is a time- and resource-consuming process required to get to that point, the time for which has long since passed.

## II. ARGUMENT

### A. The Order Excluding Mr. Johnson's Opinions Did Not Contemplate Allowing Him to Later Offer New Opinions.

Plaintiffs claim that Bard has "misread" the Court's order excluding Mr. Johnson's opinion, suggesting that the exclusion was narrowly limited to the issue of the relevance of BD's financials and, therefore, Plaintiffs' remained free to "supplement[]" his report or "substitut[e]" new opinions. Resp. Br., ECF No. 344, at 6-7. But that is an extraordinary takeaway from the Court's order.

To begin with, Bard's Motion to Exclude Mr. Johnson was not limited in scope, as Plaintiffs suggest, to "Mr. Johnson's opinions related to the financial condition of their non-party parent company, Becton Dickinson." *Id*. Bard moved to excluded Mr. Johnson's opinions in their

3

entirety; his focus on BD's financials was just one of many grounds. *See* Bard's Motion to Exclude the Testimony of Plaintiffs' Expert Robert W. Johnson, ECF No. 66, ("Johnson Motion") at 1, 5-7. And the Court agreed, granting Bard's motion on that ground, which eliminated the need to rule on Bard's other arguments. *See* EMO No. 20, ECF No. 220, at 10 ("Accordingly, there is no justification to depart from this Court's prior ruling or to address Defendants' other grounds for excluding Johnson's testimony. Defendants' motion is **GRANTED**.") (emphasis in original).

The order contained no caveats or conditions. It did not suggest that Mr. Johnson's opinions were otherwise admissible, or that the Court would be open to admitting Mr. Johnson's opinions if he would simply make them about Bard instead of BD. Nor do Plaintiffs cite any authority for the notion that a party whose expert's opinions were fully excluded on one ground may presume from the Court's decision not to address any other grounds for exclusion that it may "supplement" that expert's opinion and gain admission, even at the eleventh hour before trial. Plaintiffs' wishful thinking would strip the Court's order, and indeed the whole *Daubert* process, of any real effect.

Moreover, Plaintiffs do not dispute that it would be inappropriate for Mr. Johnson to offer new opinions, yet they claim Mr. Johnson's Bard opinions will not be new, just "supplemental." Resp. Br., ECF No. 344, at 6. However, Plaintiffs' labels are meaningless. Mr. Johnson never opined on Bard's financial condition, which was the reason for the exclusion of his opinions; now he intends to do so. That is a new opinion.

Plaintiffs offer the nonsensical response that all Mr. Johnson intends to do is "update the slides from his expert report by replacing BD financial information with Bard financial information." *Id*. Plaintiffs do not need an expert to present financial information on a slide, and

4

if that is Mr. Johnson's intended role, then he is not needed, just as in *Johns*.[1] One can only assume that Mr. Johnson actually intends to analyze that Bard's financial data to render opinions about Bard's financial condition – opinions that have not previously been disclosed. That is inappropriate under Rule 37(c), and that is where the discussion about the admissibility of Mr. Johnson's new or so-called "supplemental" opinions should end.

      **B.**      **Bard Did Not Agree to Allow New Or Supplemental Opinions From Mr. Johnson.**

The October 26, 2021, Order excluding Mr. Johnson's opinions from this case leaves Plaintiffs with no escape routes, except to manufacture an implausible narrative that Bard somehow prospectively waived that order in a January 2020 email chain between counsel. That is, of course, not true.

The emails in question showed the parties discussing, in cooperative fashion, a potential supplemental production of Bard's financial information, which Plaintiffs thought would be necessary given Bard's position that its financials should be used in the determination of punitive damages, not BD's as Plaintiffs contended as the time. January 2020 Emails, ECF No. 344-1, at 2. Bard's counsel was "happy to work with [Plaintiffs]" in principle as to what they felt need to be supplemented concerning Bard's financial information, with the caveat that Bard would have to evaluate what Plaintiffs were specifically requesting in terms of supplementation. *Id*.

That was the thrust of the email exchange upon which Plaintiffs rest their "agreement" theory – a willingness to cooperate with Plaintiffs about supplementing Bard's financial information. Where Plaintiffs attempt to show an agreement to allow Mr. Johnson to supplement his report, there in fact is no such agreement at all. In his email, Plaintiffs' counsel signaled the

---

[1] One of the arguments made by Bard in moving to exclude Mr. Johnson's opinion was that they would not be helpful to the jury under Federal Rule of Evidence 702. Johnson Motion, ECF No. 66, at 7-8.

5

intention to supplement Mr. Johnson's report, but "***we will embark down this road*** only if you are successful in making the argument that Bard's financials should be used for a punitive damages analysis, not Becton Dickinson's." *Id*. (emphasis added). Bard's counsel responded by agreeing that "any supplementation of Mr. Johnson's report ***can be dealt with down the line*** after both sides have had a chance to argue, and the court devices, which financials if any, should be the appropriate basis of a punitive damages." *Id.* (emphasis added). Thus, any "agreement" (*understanding* would be a more conceptually accurate word) reached in these emails with respect to a potential supplementation of Mr. Johnson's report was strictly procedural, *i.e.*, whether Mr. Johnson can supplement his report would be a question to be debated a later day, namely when the Court decided which company's financials would be relevant.

The problem for Plaintiffs is that day came and went on June 28, 2021, when the Court in *Johns* ruled in Bard's favor on which company's financials was relevant (Bard's) and excluded the only opinions Mr. Johnson had ever disclosed. Per the January 2020 "agreement," such as it were, that order meant the time was ripe to discuss whether Mr. Johnson should be allowed to "supplement" his report and for Plaintiffs to take the necessary steps to preserve their rights in that regard; it did not automatically trigger leave allowing Mr. Johnson to redraft or supplement his report.

That is where even Plaintiffs' "agreement" story unravels further. In the wake of the June 28, 2021, Order, Plaintiffs did nothing to seek leave to resubmit or supplement Mr. Johnson's report.[2] Instead, their counsel proceeded to the *Johns* trial, during which they sought and received substantial supplemental discovery into Bard's financials, but they did so without any mention of

---

[2] Plaintiffs suggest that after the Court's June 28, 2021, Order in *Johns*, "Plaintiffs repeatedly informed Defendants that they intended to supplement Mr. Johnson's report as soon as they received the necessary financial information and conducted a supplemental deposition on that information," but tellingly, they only cite to the email exchange between the parties' counsel in December 2021 and January 2022.

6

supplementing Mr. Johnson's report. After the *Johns* trial, Plaintiffs would go on to signal their intention to "supplement" Mr. Johnson's report in discussions with Bard and through discovery updates, but Bard never agreed to a new or supplemental report. And when the Court excluded Mr. Johnson's opinions from this case, the point became moot. The Order left no room for a do-over.

Finally, Plaintiffs' claim that "Defendants represented to the Court that they would agree to the supplementation of Mr. Johnson's report" is a complete fabrication. Resp. Br., ECF No. 344, at 2. Plaintiffs cite to no portion of any Court record or even email exchange for this claim, and the only court record cited in their brief at all is the Status of Discovery as of December 8, 2021 ("Discovery Update"). There, Plaintiffs represented their intention to the Court to "supplement the expert report of Bob Johnson," but for their part, "Defendants reserve[d] their rights in connection with any expert disclosures, opinions, or discovery in relation to this issue." Discovery Update, ECF No. 344-1, at 4-5. In other words, Bard did not agree to a new or supplemental report from Mr. Johnson, and Plaintiffs knew that from discussions with counsel at the time.[3]

In short, the January 2020 email chain did not represent an agreement between Bard and Plaintiffs to allow Mr. Johnson to offer new or supplemental opinions, nor did it create a shield around Mr. Johnson from all *Daubert* orders yet to come. Nothing later came close to an

---

[3] Bard should clarify one piece of the record, which was not addressed in Plaintiffs' Response Brief, but could nonetheless cause confusion. During the October 13, 2021, Case Management Conference, the parties indicated to the Court that they were close to resolving their issues regarding financial discovery. Oct. 13, 2021, CMC Tr., ECF No. 226, at 13:25-15:11. In that discussion, Plaintiffs' counsel indicated "[w]e have an agreement in principle to go forward with the deposition where we will supplement our expert's report on the topic of financials." *Id*. at 14:13-15. Bard's counsel stated "[w]e have been meeting and conferring and are close to an agreement with plaintiffs so I agree with Ms. Stokes *there is nothing for the Court to do*. We're optimistic that we can work this out on our own and get a solution that will apply to future cases as well." *Id*. at 15:7-11 (emphasis added). To be clear, Bard was not agreeing with Plaintiffs' account of where the parties stood with respect to any potential supplemental report, but that the parties were making progress in their meet and confer efforts and the Court did not have to get involved. On that note of cooperation, it did not seem necessary or appropriate to quibble with Plaintiffs' comments.

7

agreement for the eleventh hour do-over that Plaintiffs seek now.

      **C.     Plaintiffs Are Not Without Mr. Johnson's Opinions Because of Bard's Discovery Conduct.**

Faced with the dispositive effect of the Court's October 26, 2021, Order excluding Mr. Johnson's opinions, and unable to show any actual "agreement" between the parties that would somehow shield Mr. Johnson's new opinions from that order, Plaintiffs resort to laying blame on Bard for allegedly "obstruct[ing]" and "drag[ging] [its] feet" in financial discovery. Resp. Br., ECF No. 344, at 7, 8.

But there is nothing to this narrative either. The fact is, as even Plaintiffs' Response Brief makes clear, whatever intentions they claim to have had to supplement Mr. Johnson's report going as far back as January 2020, they did not meaningfully pursue supplemental discovery into Bard's financial until after the Court's June 28, 2021, Order in *Johns* excluding Mr. Johnson's opinions from his only report in the litigation. Those efforts took place during *Johns* trial and resulted in substantial supplemental discovery into Bard's financials, including a deposition and document product. *See Johns*, Notice of Compliance, ECF No. 549 ("On September 7, 2021, the Court ordered Defendants to provide Plaintiff with certain financial documents related to Davol Inc. Defendants have satisfied this directive and produced financial management reports for the years 2013-2016 from Davol Inc. and from C. R. Bard, Inc.'s reporting of Davol Inc., as well as supplemental written discovery responses which they served on Plaintiff."). Importantly, supplementing Mr. Johnson's opinions was never tied to those efforts, and the PSC was ready for the possible punitive damages phase in *Johns* without him. Bard has supplemented its production of Bard financial information even further since then, and it is unclear why Plaintiffs should be any less prepared to proceed without Mr. Johnson.

Nor should Bard's most recent production cause a stir. As explained in Bard's initial brief,

8

on January 28, 2022, at Plaintiffs' informal request, Bard produced Davol's balance sheets from *2013 through 2016* and profit and loss reports from Bard's three other divisions from *2013 through 2016*. Plaintiffs could have asked for these materials before they served Mr. Johnson's report, before they served his supplemental report, before he was deposed, before Bard filed its *Daubert* motion in this case, or soon after the Court excluded Mr. Johnson's identical opinions from *Johns*, which put the PSC and Plaintiffs on notice that Mr. Johnson's opinions would be excluded in this case for failing to opine on the financial condition of Bard or Davol.

Plaintiffs' response is to claim "Defendants agreed to work with Plaintiffs on the topic of Plaintiffs' supplementing Mr. Johnson's expert report with financial information" and "Plaintiffs had not reason to believe that Defendants would go back on their agreement." Resp. Br., ECF No. 344, at 8. Again, this is a myth of their own making, but it still begs the question why Plaintiffs waited until December 2021, seven months after Dr. Johnson's opinions in *Johns* and two months after his opinions were excluded in *Milanesi*, to request these documents. Put differently, Plaintiffs have not made the case that it was Bard dragging its feet.

**D.    Basic Considerations of Prejudice and Burden Weigh Against Allowing Mr. Johnson's New Opinions.**

Plaintiffs make no serious attempt to respond to the substantial considerations of prejudice and burden to Bard if Mr. Johnson is allowed to offer his new opinions about Bard's financial opinions. According to Plaintiffs, "Defendants have had more than ample notice and opportunity to prepare their case in light of Mr. Johnson's anticipated supplemental report." Resp. Br., ECF No. 344, at 5. Plaintiffs' logic is twisted. Knowing that Mr. Johnson intends to offer new opinions about Bard's financial condition is hardly the same as knowing what those opinions are or whether they will be admissible. The trial is 17-days away, and, if Mr. Johnson is allowed to swap in a replacement expert report at this time, Bard will be forced to re-depose him, file and argue a new

9

*Daubert* motion, and potentially prepare and call responsive witnesses – *i.e.*, take an incredibly time- and resource-consuming detour on the eve of trial.

As if to prove the point, Plaintiffs contend that they would be prejudiced if Mr. Johnson's new opinions are not allowed, because they have already predetermined those opinions to be "relevant" and "helpful." *Id*. But that is what the processes prescribed by Rule 26 and *Daubert* are meant to determine, and Plaintiffs offer no compelling reason to restart those processes on the eve of trial, when Mr. Johnson's opinions were excluded months ago.

### III. CONCLUSION

For these reasons, Mr. Johnson should not be allowed to proffer new or "supplemental" opinions.

Dated: March 4, 2022            Respectfully submitted

*/s/ Michael K. Brown*

Michael K. Brown
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone: (213) 457-8000
mkbrown@reedsmith.com

Eric L. Alexander
REED SMITH LLP
1301 K St., NW
Suite 1000-East Tower
Washington, D.C. 20005
Telephone: (202) 414-9200
ealexander@reedsmith.com

Lori G. Cohen
GREENBERG TRAURIG, LLP
Terminus 200
3333 Piedmont Road NE
Suite 2500
Atlanta, GA 30305
(678) 553-2385
cohenl@gtlaw.com

10

*Co-Lead Counsel for Defendants C. R. Bard, Inc. and Davol Inc.*

William D. Kloss, Jr.
VORYS SATER SEYMOUR AND PEASE
52 East Gay Street
Columbus, OH 43215
(614) 464-6202
wdklossjr@vorys.com

*Liaison Counsel for Defendants C. R. Bard, Inc. and Davol Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of this electronic filing to all counsel of record.

>        */s/ Michael K. Brown*
>        Michael K. Brown