UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: DAVOL, INC./C.R. BARD, INC., POLYPROPYLENE HERNIA MESH PRODUCTS LIABILITY LITIGATION | Case No. 2:18-md-2846<br><br>JUDGE EDMUND A. SARGUS, JR.<br>Magistrate Judge Kimberly A. Jolson |

**This document relates to:**
*Milanesi, et al. v. C.R. Bard, Inc., et al.*
**Case No. 2:18-cv-01320**

## DISPOSITIVE MOTIONS ORDER No. 6

Before the Court is Plaintiffs Antonio Milanesi and Alicia Morz de Milanesi's Motion for New Trial on Damages, or in the Alternative, Motion for New Trial under Federal Rule of Civil Procedure 59.  (ECF No. 385.)  Plaintiffs argue that they are entitled to a new trial because the Court improperly instructed the jury as to the burden of proof for the doctrine of avoidable consequences, which may have affected the jury's damages award.  For the reasons stated below, Plaintiffs' Motion is **DENIED**.

### I. Background[1]

Plaintiffs' case is the second bellwether trial selected from thousands of cases in this multidistrict litigation ("MDL") against Defendants.  The Judicial Panel on Multidistrict Litigation described the cases in this MDL as "shar[ing] common factual questions arising out of allegations that defects in defendants' polypropylene hernia mesh products can lead to complications when implanted in patients, including adhesions, damage to organs, inflammatory and allergic responses,

---

[1] For a more complete factual background, the reader is directed to the Court's summary judgment opinion and order in this case *Milanesi v. C.R. Bard*, Case No. 2:18-cv-01320.  (ECF No. 167.)  All docket citations are to the *Milanesi* case, 2:18-cv-1320, unless otherwise noted.

1

foreign body rejection, migration of the mesh, and infections." (No. 2:18-md-02846, ECF No. 1 at PageID #1–2.)

Plaintiffs brought this action to recover for injuries sustained as a result of the implantation of the Ventralex Large Hernia Patch, alleging that Defendants knew of the risks presented by the device but marketed and sold it despite these risks and without appropriate warnings. After summary judgment, the following claims remained for trial: strict liability design defect, negligent design defect, negligent failure to warn, negligent misrepresentation, fraudulent misrepresentation, loss of consortium, and punitive damages. Trial commenced on March 21, 2022, and lasted for approximately four weeks. On April 15, 2022, the jury returned a verdict for Defendants on Plaintiffs' claims of strict liability design defect, negligent failure to warn, negligent misrepresentation, and fraudulent misrepresentation. The jury returned a verdict for Plaintiffs on the claims of negligent design defect, with an award of $250,000, and loss of consortium, with an award of $5,000. The jury did not award punitive damages.

## II. Legal Standard

A federal court, hearing a case on the basis of diversity jurisdiction, reviews a motion for a new trial based on a federal standard. *Conte v. Gen. Houseware Corp.*, 215 F.3d 628, 637 (6th Cir. 2000). Under Rule 59 of the Federal Rules of Civil Procedure, a new trial may be granted in a jury trial for "any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Granting a new trial is within the sound discretion of the trial court and an abuse of discretion occurs only upon "'a definite and firm conviction that the trial court committed a clear error of judgment.'" *CFE Racing Prod., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 584 (6th Cir. 2015) (quoting *Mike's Train House, Inc. v. Lionel, L.L.C.,* 472 F.3d 398, 405 (6th Cir. 2006)).

A court may grant a new trial solely on damages if the issues of liability and damages are not "so interwoven as to be inseparable." *Devine v. Patteson*, 242 F.2d 828, 833 (6th Cir. 1957). However, "[a] trial court may not grant a new trial on the ground of insufficient damages unless the jury verdict is one that could not reasonably have been reached." *Acuity Mut. Ins. Co. v. Frye*, 471 F. App'x 431, 435 (6th Cir. 2012) (citing *Walker v. Bain*, 257 F.3d 660, 674 (6th Cir. 2001)). "The remedy of a new trial for inadequate damages is appropriate only where the evidence indicates that the jury awarded damages in an amount substantially less than unquestionably proved by the plaintiff's uncontradicted and undisputed evidence." *Walker*, 257 F.3d at 674 (citing *Anchor v. O'Toole*, 94 F.3d 1014, 1021 (6th Cir.1996)).

### III.    Analysis

Plaintiffs claim that they are entitled to a new trial on damages because Defendants "improperly convinced this Court that the avoidable consequences doctrine is not an affirmative defense," and therefore the Court did not properly instruct the jury that Defendants had the burden of proof regarding the avoidable consequences doctrine. (ECF No. 385 at PageID #19296.) Plaintiffs claim that because the jury was not properly instructed, the damages award could have been affected and a new trial is warranted. (*Id.* at PageID #19303.)

Both parties cite to *System Components Corp. v. Florida Dept. of Transportation* in support of their positions. In *System Components*, the Florida Supreme Court explained the doctrine of avoidable consequences as follows:

> The doctrine of avoidable consequences, which is also somewhat inaccurately identified as the "duty to mitigate" damages, commonly applies in contract and tort actions. *See generally* 17 Fla. Jur.2d, *Damages,* §§ 103–04 (2004). There is no actual "duty to mitigate," because the injured party is not compelled to undertake any ameliorative efforts. The doctrine simply "prevents a party from recovering those damages inflicted by a wrongdoer that the injured party *could have* reasonably avoided." The Florida Bar, *Florida Civil Practice Damages* § 2.43, at 2–30 (6th ed.2005) (emphasis supplied) (citing *Sharick v. SE. Univ. of*

3

> *Health Scis., Inc.,* 780 So.2d 136 (Fla. 3d DCA 2000); *Graphic Assocs., Inc. v. Riviana Rest. Corp.,* 461 So.2d 1011 (Fla. 4th DCA 1984)). The doctrine does not permit damage reduction based on what "could have been avoided" through Herculean efforts. *See, e.g., Thompson v. Fla. Drum Co.,* 651 So.2d 180, 182 (Fla. 1st DCA 1995) ("Extraordinary efforts on the part of a plaintiff to mitigate are not required."), *approved,* 668 So.2d 192 (Fla.1996). Rather, the injured party is only accountable for those hypothetical ameliorative actions that could have been accomplished through "ordinary and reasonable care," without requiring undue effort or expense. *Graphic Assocs.,* 461 So.2d at 1014 (the doctrine "prevents a party from recovering those damages inflicted by a wrongdoer which the injured party 'could have avoided *without undue risk, burden, or humiliation.*' " (emphasis supplied) (quoting Restatement (Second) of Contracts § 305(1) (1979))); *Royal Trust Bank of Orlando v. All Fla. Fleets, Inc.,* 431 So.2d 1043, 1045 (Fla. 5th DCA 1983) (substantially similar).

*Sys. Components*, 14 So. 3d 967, 982 (Fla. 2009).  According to Plaintiffs, the language in *System Components* and the cases following it support Plaintiffs' position that the doctrine of avoidable consequences is an affirmative defense, and the Court erred in not instructing the jury that Defendants had the burden of proof.  (ECF No. 385 at PageID #19299.)  The Court ultimately instructed the jury as follows:

**Instruction No. 25**

**DEFENSE ISSUE ON AVOIDANCE OF CONSEQUENCES**

> Defendants claim that Mr. Milanesi could have reduced his future damages by undergoing an additional surgery to repair his recurrent hernias, and that such refusal was unreasonable.  There is no actual duty to mitigate or reduce his damages because Mr. Milanesi is not required to undertake any corrective efforts.  The law simply prevents Mr. Milanesi from recovering those damages inflicted by Defendants that Mr. Milanesi could have reasonably avoided.  The law does not permit damage reduction based on what could have been avoided through extraordinary efforts.  Rather, Mr. Milanesi is only accountable for corrective actions that could have been accomplished through ordinary and reasonable care, without requiring undue effort or expense.

*Milanesi v. C.R. Bard, Inc. et al.*, S.D. Ohio Case No. 2:18-cv-1320, Final Jury Instruction No. 25.

In response, Defendants claim that Plaintiffs "expressly forfeited their instructional error claim" as to Jury Instruction No. 25 because they did not object to the final instruction at the charge conference or at any point thereafter.  (ECF No. 388 at PageID #19463.)  According to Rule 51 of

4

the Federal Rules of Civil Procedure, "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." *Woodbridge v. Dahlberg*, 954 F.2d 1231, 1235 (6th Cir. 1992) (internal citations omitted).  Defendants concede that prior to the Court's charge conference Plaintiffs submitted a proposed instruction that would have characterized avoidable consequences as an affirmative defense, and that the burden of proof question was debated during the charge conference. (*Id.* at PageID #19465.) However, Defendants point out that after the Court listened to the parties' positions on Jury Instruction No. 25 and modified the instruction in response to the parties' concerns, Plaintiffs did not object to the final instruction. (*Id.* at PageID #19466; ECF No. 407 at PageID #22854–55.)  At the charge conference, the Court reviewed the authorities cited by Plaintiffs and noted that those authorities did not address which party has the burden of proof for the doctrine of avoidable consequences. (*Id.* at PageID #22852 ("I don't see anything in here that says whose burden it is.").)

Given the lack of on-point authority, the Court proposed a compromise of simply pulling language directly from the Florida Supreme Court's decision in *System Components*, which Plaintiffs cited as the authority for their proposed instruction on avoidance of consequences. (ECF No. 366 at PageID #18970; ECF No. 407 at PageID #22850–52.)  The Court read aloud the language from *System Components* and the parties offered suggestions for how to best modify the language in crafting Instruction No. 25.  (*Id.*)  The parties agreed on slight modifications such as changing the word "herculean" to "extraordinary" and changing "ameliorative" to "corrective." (*Id.* at PageID #22853–54.)  Neither party raised an objection to the final instruction.  (*Id.* at PageID # 22855.)  Plaintiffs' counsel did state that she "th[ought] we need[ed] to mention that if the refusal or if not mitigating was reasonable." (*Id.*)  However, the Court addressed that concern

5

by pointing out that reasonableness was already mentioned several times in the instruction. (*Id.*) In fact, the instruction used the word "reasonable" once, "unreasonable" once, "reasonably" once, and also mentioned that the law did not permit a reduction in damages based on what could have been avoided through "extraordinary efforts." *Milanesi v. C.R. Bard, Inc. et al.*, S.D. Ohio Case No. 2:18-cv-1320, Final Jury Instruction No. 25. After the Court addressed the concern about reasonableness, Plaintiffs' counsel mentioned no remaining objection or concerns with Instruction No. 25.

In response, Plaintiffs cite to *Gradsky v. Sperry Rand Corp.* in support of their position that a formal objection is not required if "it is clear that the judge was made aware of the possible error in or omission from the instructions." *Gradsky*, 489 F.2d 502, 503 (6th Cir. 1973). However, as noted in *Woodbridge v. Dahlberg*, when the Sixth Circuit's "decisions subsequent to *Gradsky* are also considered, a more complete statement of a party's obligation under Rule 51 emerges." *Woodbridge*, 954 F.2d at 1235. In *Woodbridge*, "[t]he trial court discussed the jury charge with counsel at some length prior to closing argument." *Id.* The court heard objections from both parties. *Id.* In response to the objections, the trial court modified the instruction and "counsel did not mention the omission of the language about which appellants [] complain[ed on appeal]." *Id.* at 1236. The Sixth Circuit reasoned as follows:

> Considering the entire discussion between the trial court and the attorneys in this case concerning the jury instructions, the court finds that the trial court was not made aware of the omission from the instructions. **The trial court modified the supervisory liability instruction in several respects to accommodate appellants' concerns. Changes in the instructions were made before the court read the instructions to the jury and after their reading.** The supervisory liability instruction itself was changed at appellants' request after the reading of the instructions. Appellants' counsel specifically advised the court that there were no other objections to the instructions, without mentioning the requested instructions submitted earlier. The court's reasonable conclusion would have been that appellants were satisfied with the instruction ultimately given. It was not made

6

>aware that an objection remained.
>
>>The situation in *Gradsky* was not like that presented here. In *Gradsky* there was a proposed instruction which the trial court refused to give and objections to the opposing party's requested instruction. Although there were several pre-charge conferences, this court did not find any of the specific discussion during those conferences sufficiently pertinent to its decision to mention the content of the conferences in its opinion. **Here, where the trial court made every effort to draft an instruction acceptable to appellants and incorporated appellants' requested changes into the instruction, the content of the discussion is extremely important. Under the circumstances of this case appellants were required to let the trial court know that the redrafted charge was still unacceptable.** Their failure to do so is a failure to comply with Rule 51's requirement that they object before the jury begins deliberations, "stating distinctly the matter objected to and the grounds of the objection."
>
>>This result is entirely consistent with this court's most recent decisions relating to the preservation of a claimed error in jury instructions for appellate review. In both *Murphy v. Owens–Illinois, Inc.,* 779 F.2d 340, 345–46 (6th Cir.1985), and *Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir.1985), this court ruled that a party had not preserved a claim of error in the jury instruction for appellate review under circumstances somewhat similar to those here.
>
>>In *Murphy* counsel excepted to a jury instruction at a pre-charge conference, at which many issues relating to the instructions were discussed, saying that the instruction did not apply to the case on trial. **The trial judge then gave his reasons for including the instruction. No further discussion about this part of the charge occurred.** Counsel did not object to this part of the charge when the lawyers were called to the bench after the instructions were read. This court held that the issue concerning the charge was not preserved for appellate review and, citing *Dunn v. St. Louis–San Francisco Ry. Co.,* 370 F.2d 681, 684 (10th Cir.1966), noted that "[t]he objections should be made not only before the jury retires, but after the charge is given." 779 F.2d at 346.
>
>>In *Roberts* this court rejected a party's argument that he preserved a claimed error in the jury instruction for appellate review by "implicitly" objecting through offering a different instruction. 773 F.2d at 723. Without citing *Gradsky,* the court acknowledged that Rule 51 could be satisfied by less than formal objection. Formal objection is not required, however, " 'only if it is clear that the judge was made aware of the possible error in or omission from the instructions.' " *Id.* (citing *Transcontinental Leasing, Inc. v. Michigan Nat'l Bank,* 738 F.2d 163 (6th Cir.1984)).

*Id.* at 1236–37 (emphases added).  Plaintiffs' reliance on *Gradsky* ignores highly relevant subsequent caselaw clarifying a party's obligation to object to a jury instruction.  As in

7

*Woodbridge*, this Court "made every effort to draft an instruction acceptable to [Plaintiffs]" and "[u]nder the circumstances of this case [Plaintiffs] were required to let the trial court know that the redrafted charge was still unacceptable." *Woodbridge*, 954 F.2d at 1236.  And as to Plaintiffs' counsel's request for language about reasonableness, the Court "gave [its] reasons for" not adding an additional reference to reasonableness and "[n]o further discussion about this part of the charge occurred." *Id.* (citing *Murphy*, 779 F.2d 340, 345–46).  Plaintiffs' reliance on *Van Huss v. Shoffner* is also misplaced.  In *Van Huss*, the Sixth Circuit addressed a party's failure to formally re-notice their objection after the charge was read to the jury. *Van Huss v. Shoffner*, 81 F. App'x 17, 22 (6th Cir. 2003).  However, unlike in this case, in *Van Huss* the plaintiffs did formally object to the instructions prior to the charge being read to the jury.  *Id.* at 19.

In addition to the Plaintiffs' failure to object to the challenged instruction, the Court was not, as Plaintiffs repeatedly assert, "incorrectly convince[ed] . . . that the Doctrine of Avoidable Consequences put no burden on Defendants."  (ECF No. 391 at PageID #19624.)  Rather, in the absence of on-point authority or a specific Florida standard jury instruction, the Court elected to use language directly from a Florida Supreme Court opinion, the same opinion which Plaintiffs cited in their proposed instruction. (ECF No. 366 at PageID #18970.)  In support of their Motion, Plaintiffs point to a Florida standard jury instruction that instructs that a defendant bears the burden of proof in relation to the doctrine of avoidable consequences.  (ECF No. 385 at PageID #19300; Fla. Std. Jury Instr. (Contract & Business) 504.9.)  However, as Plaintiffs note, the model instruction applies to contract and business claims.  (*Id.*)  There is no corresponding instruction for products liability claims.  The instruction's presence in the contract and business standard jury instructions shows that the Florida Supreme Court Standard Jury Instructions Committees could have included a corresponding instruction in the civil standard instructions, but they did not do so.

8

In the absence of an on-point standard instruction, rather than crafting its own instruction from scratch, the Court elected to use language directly from the Florida Supreme Court's decision in *System Components* in order to get the clearest and most accurate application of Florida law. The Court finds that Plaintiffs' arguments are without merit, and the jury's award of damages is not "substantially less than unquestionably proved by the plaintiff's uncontradicted and undisputed evidence." *Walker*, 257 F.3d at 674.

## IV.   Conclusion

For the reasons set forth above, Plaintiffs' Motion for New Trial on Damages, or in the Alternative, Motion for New Trial (ECF No. 385) is **DENIED**.

**IT IS SO ORDERED.**


<u>**7/11/2022**</u>                                                              <u>**s/Edmund A. Sargus, Jr.**                              </u>
**DATE**                                                                 **EDMUND A. SARGUS, JR.**
                                                                         **UNITED STATES DISTRICT JUDGE**